# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| Rose Dobbins, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 13-2112 |
| | ) | |
| St. Jude Children's Research Hospital, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant St. Jude Children's Research Hospital's ("St. Jude") March 21, 2014 Motion for Summary Judgment (the "Motion"). (D.E. 11; Mem. of Law, D.E. 11-1.) Plaintiff Rose Dobbins ("Dobbins") responded on May 2, 2014, and St. Jude replied on May 16, 2014. (Resp., D.E. 18; Rep, D.E. 19.) Dobbins brings one count of age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 et seq.,[1] and the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-401, and one count of unlawful retaliatory discharge under the THRA. For the following reasons, the Motion for Summary Judgment is GRANTED.

---

[1] The Court construes Dobbins' claim for age discrimination under Title VII of the Civil Rights Act as a claim under the ADEA.

**I.  Background**

Dobbins was hired by St. Jude as a Nursing Assistant on or about May 2, 1988.  (Def. SUMF, D.E. 11-2 ¶ 2.)  On or about September 9, 1991, she transferred to the position of File Clerk in St. Jude's Medical Records Department, which she held until approximately June 2001.  (Id.)  On or about July 2, 2001, Dobbins transferred to the position of Animal Husbandry Technician I in the Animal Resource Center.  (Id.)  The Animal Resource Center ("ARC") provides a comprehensive, centralized animal care program in support of laboratory animal research at St. Jude.  (Id. ¶ 3.)  The ARC supports the research of fifty-six St. Jude cancer investigators in five programs and twenty-five infectious disease investigators by providing specialized housing and animal care, diagnostic services, regulatory compliance, rodent breeding colony management, cryopreservation services, training, and professional veterinary services related to laboratory animal medicine and science.  (Id. ¶ 3.)

As Animal Husbandry Technician I, Dobbins worked in the ARC's rodent barrier facilities, which are to maintain pathogen-free rodents and containment laboratories for work with hazardous agents in support of cancer biology research.  (Id. ¶ 3, 4.)  On or about April 12, 2004, Plaintiff was promoted to the position of Animal Husbandry Technician II in the ARC, the position she held until she was terminated on July 6, 2012.

(Id. ¶ 4.) Dobbins' job duties as an Animal Husbandry Technician II included: cage changing, feeding and watering animals, observing the general health of animals, conducting animal transfers, evaluating and recording animal environments, performing routine sanitation of assigned areas, maintaining proper animal identification and records, recognizing overcrowding and other basic animal health problems, and documenting those problems as appropriate. (Id. ¶ 5.) She also performed or assisted in basic techniques on animals, such as malocclusion, ear tagging, and blood collection. (Id.) Although Plaintiff worked some with ferrets, her duties always included the care of mice and rats, and her duties focused exclusively on mice for the last two years she was employed at St. Jude. (Id.) The mice are genetically modified for cancer research. (Id.)

Animal Husbandry Technicians are assigned responsibility for a particular room or rooms in the ARC containing rolling racks of animal cages in a controlled, sterile environment. (Id. ¶ 6.) Technicians are required to complete two room checks a day, one in the morning and one in the afternoon. (Id.) Those checks require, among other things, looking at each cage in the room to determine whether the mice have access to food and water and to note any overcrowding, births, and sick or dead mice. (Id.) The technician is also responsible for changing

3

each cage, which can hold up to five mice (ten for colony cages) every seven days. (Id.) The technician removes the mice from the soiled cage using tweezers and places the animals into a clean cage. (Id.) A card on the cage identifies the cage number, the rack number, the room number, the name of the principal investigator using the mice for research, and other essential information about the animals, including the number of animals in each cage. (Id.) During the cage changing process, this card is removed from the soiled cage and placed on the clean cage. (Id.) The Animal Husbandry Technician is responsible for checking the number of animals placed in each clean cage against the number of animals on the card to ensure that no live animals are left in the soiled cage. (Id.) The dirty cages are then placed on a large rolling rack, along with a cage wash card that indicates that the cages are ready to be taken to the cage wash area. (Id.) Once the rolling racks are placed outside the sterile research area, the racks are collected by a Cage Wash Attendant. (Id. ¶ 7.)

Sherri Brown ("Brown") has held the position of Manager of Husbandry and Cage Wash Operations, ARC at St. Jude since 2008. (Id. ¶ 8.) In her capacity as Manager of Husbandry and Cage Wash, Brown manages and coordinates the activities of the ARC Husbandry and Cage Wash Services. (Id.) As part of her duties, Brown monitors the performance of assigned staff, including

4

administering disciplinary actions in collaboration with the ARC Director, Richard J. Rahija ("Dr. Rahija"). (Id.) Brown also investigates possible improper or unsatisfactory work performance and handles appeals of disciplinary actions from husbandry and cage wash employees. (Id.) Dawn Byers ("Byers") has held the position of Husbandry Supervisor, ARC at St. Jude since 2008. (Id. ¶ 9.) Byers was Dobbins' immediate supervisor from approximately January 2010 until Dobbins was terminated. (Id.)

Dobbins received numerous written warnings for deficient job performance before a final instance that resulted in her termination. On March 28, 2010, she received her first "Final Written Warning Disciplinary Action" for failing to separate a delivery of mice by gender, resulting in pregnant animals, and for failing to observe and document several overcrowded cages and one moribund (dying) mouse. (Id. ¶ 10.) Dobbins appealed, and both Brown and Dr. Rahija concluded that the disciplinary action was appropriate. (Id. ¶¶ 11, 13.) On January 19, 2011, Dobbins received another "Final Written Warning Disciplinary Action" for sending a live animal to cage wash. (Id. ¶ 15.) In that case, Dobbins admitted error. (Id.) On June 24, 2011, Dobbins received a third "Final Written Warning Disciplinary Action" for sending eleven four-day-old mouse pups to cage wash, and again admitted error. (Id. ¶ 17.) On May 3, 2012, Dobbins

5

received a "Documented Counseling Disciplinary Action" for unproductive use of work time for playing cards during her shift. (Id. ¶ 18.) Dobbins admitted the infraction. (Id.) On May 30, 2012, five mice were found dead with no food or water in rooms for which Plaintiff and another technician, Leslie McArthur, were responsible. (Id. ¶ 19.) On June 18, 2012, four sick mice and six dead mice were found in cages with no food or water in rooms for which Plaintiff and two other technicians, Melissa Wood and Heather Winters, were responsible. (Id. ¶ 19.)

Sending a live animal to cage wash, which is outside the controlled, sterile environment of the research areas, is a serious event because it almost always requires the euthanization of the animal and can result in abandonment of the study. (Id. ¶ 16.) When research animals die in circumstances suggestive of neglect, federal regulations require St. Jude to investigate and, if negligence is found, to report the deaths to a federal oversight agency. (Id. ¶ 20.) The investigation is overseen by the St. Jude Animal Care and Use Committee ("ACUC"), chaired by Dr. Stacey Schultz-Cherry. (Id.) The investigation conducted by the ACUC into the animal deaths on May 30 and June 18, 2012, determined that the mice had likely died of starvation or dehydration over a period of days, and, by the condition of the carcasses, which showed signs of cannibalization, had been dead for several days before they were discovered. (Id.) The

6

technicians who were assigned to the rooms in which the dead animals were found had not noted any abnormal conditions until the animals had been long dead. (Id.)

St. Judge terminated Dobbins' employment after concluding that she sent another live mouse to cage wash on July 3, 2012. (Id. ¶ 21-24.) Brown conducted the investigation into the incident. (Id.) Dobbins claims that she left work before the incident. (Resp., ECF No. 18 at 4.) Brown obtained statements from several of Dobbins' coworkers, all of which contradict that claim. Sharika Cooper, the cage wash attendant who discovered the live mouse, stated that Dobbins signed the cage wash card on the cage with the live mouse in it. (Def. SUMF ¶ 21.) Other witnesses stated that Dobbins had attempted to give them money to give to Cooper to thank Cooper for initially returning the mouse to the lab without telling anyone about the incident. (Id. ¶ 25.) Brown concluded that Dobbins was responsible for sending the mouse to cage wash. (Id. ¶ 29.) Brown and Dr. Rahija terminated Dobbins on July 6, 2012, citing her pattern of inadequate performance. (Id. ¶¶ 29-31.)

Dobbins appealed her termination to St. Jude's complaint resolution committee. (Id. ¶ 33.) The committee conducted an investigation into Dobbins' termination and unanimously agreed with the decision to terminate Dobbins' employment. (Id. ¶ 35.)

Dobbins claims that Byers made one age-related comment to Dobbins during her tenure. Dobbins testified that:

> I had been off a couple days. I had got sick. And I came back to work and I was telling her in confidence about my illness. And she said to me, well, you know, when you get old, your body – that happen[s] to your body.

(Dobbins Dep, ECF No. 12-1 at 40.) Dobbins does not claim that Byers' statement related to her termination. (Id.) Byers did not participate in the decision to terminate Dobbins, and no other age-related comments were made by management officials at St. Jude. (Id.; Def. SUMF ¶ 30.) One of Dobbins' coworkers, Heather Winters, once referred to Dobbins as "an old coon, but a hard worker." (Dobbins Dep. at 39.) Dobbins complained about that statement to Byers, but did not report the statement to anyone else at St. Jude. (Id. at 182-83.) Brown once expressed concern to Dobbins about how she went about her work, and instructed her to "try to slow down." (Id. at. 47.)

## II. Jurisdiction

This Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367 because Dobbins' THRA claims "derive from a common nucleus of operative fact." United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966).

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, the court shall grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by pointing out to the court that the non-moving party, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. See Fed. R. Civ. P. 56(c)(1); Asbury v. Teodosio, 412 F. Appx. 786, 791 (6th Cir. 2011) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

When confronted with a properly supported motion for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Wasek v. Arrow Energy Servs., 682 F.3d 463, 467 (6th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 735 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A party may not oppose a properly supported summary judgment motion by mere reliance on the

9

pleadings. See Beckett v. Ford, 384 Fed. Appx. 435, 443 (6th Cir. 2010) (citing Celotex Corp., 477 U.S. at 324). Instead, the non-moving party "must adduce concrete evidence on which a reasonable juror could return a verdict in [her] favor." Stalbosky v. Belew, 205 F.3d 890, 895 (6th Cir. 2000) (citations omitted); see Fed. R. Civ. P. 56(c)(1). The court does not have the duty to search the record for such evidence. See Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). The non-moving party has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in her favor. See Fed. R. Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111.

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

**IV. Analysis**

St. Jude argues that Dobbins cannot establish a prima facie case of age discrimination and, even if she could, cannot show that St. Jude's non-discriminatory reasons for firing her were a pretext. St. Jude also argues that there is no evidence of

10

unlawful retaliation. Dobbins argues that a reasonable jury could conclude otherwise.

**A. Age Discrimination Claims**

The analysis that applies to age discrimination claims brought under the ADEA also applies to those brought under the THRA. Bender v. Hecht's Dept. Stores, 455 F.3d 612, 620 (6th Cir. 2006). The burden of persuasion is on the plaintiff to show that "age was a 'but for' cause of the employer's adverse action." Gross v. FBL Fin. Serv's. Inc., 557 U.S. 167, 177 (2009). A plaintiff "may establish a violation of the ADEA by either direct or circumstantial evidence." Geiger v. Tower Auto., 579 F.3d 614, 620 (6th Cir. 2009). To establish direct evidence of age discrimination, there must be evidence of statements by decisionmakers related to the "decisional process" that show that age "was at least a motivating factor in the employer's actions." Geiger, 579 F.3d at 620, 621. Here, there is no direct evidence that St. Jude's decision to terminate Dobbins related to her age.

Where there is no direct evidence of age discrimination, the Court uses the McDonnell Douglas burden-shifting approach to determine whether there is sufficient circumstantial evidence of age discrimination for the claim to survive summary judgment. See Blizzard v. Marion Technical College, 698 F.3d 275, 283 (6th Cir. 2012) (citing McDonnell Douglas Corp. v. Green, 411 U.S.

11

792 (1973)). Under McDonnell Douglas, if the plaintiff succeeds in establishing a prima facie case of age discrimination, the defendant must "articulate some legitimate, nondiscriminatory reason" for the termination. McDonnel Douglas, 411 U.S. at 802. "If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is a pretext." Blizzard, 698 F.3d at 283 (quoting Sutherland v. Mich. Dep't of Treasury, 344 F.3d 603, 615 (6th Cir. 2003)).

To establish a prima facie case of age discrimination, a plaintiff must show:

> (1) Membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination.

Blizzard, 698 F.3d at 283. Dobbins cannot meet this low burden. Although she is a member of a protected class, was qualified for the position, and suffered an adverse employment action, there is no evidence that supports an inference of discrimination. The evidence overwhelmingly indicates that Dobbins was fired for incompetence, and there is no evidence that similarly incompetent, younger employees were treated differently.

Even if Dobbins could establish a prima facie case of discrimination, St. Jude has produced non-discriminatory reasons for Dobbins' termination, and there is no evidence that those

reasons were a pretext. Dobbins had been warned numerous times that her inattention to her duties was unacceptable. She received multiple "Final Written" warnings for failing to remove mice from cages before sending them to cage wash, the same infraction that eventually led to her termination. She had been reprimanded for playing cards on the job in the same month that mice under her care starved to death. Even if Dobbins' claim that she had left work before the final incident were true, the evidence is unequivocal that Brown and Dr. Rahija terminated her because of their belief that she was responsible for sending another mouse to cage wash. There is no evidence that age-related animus played any part in the decision.

**B. Unlawful Retaliation under the THRA**

Dobbins' retaliation claim must also fail. Tennessee courts look to federal anti-discrimination statutes to interpret THRA retaliation claims. Bobo v. United Parcel Service, Inc., 665 F.3d 741, 757 (6th Cir. 2012) (citing Marpaka v. Hefner, 289 S.W.3d 308, 313 (Tenn. Ct. App. 2008)). The ADEA prohibits employers from retaliating against employees for reporting age discrimination. 29 U.S.C. § 623(d). To establish a prima facie case of retaliation, a plaintiff must show that:

> (1) she was engaged in a protected activity, the defending party was aware that the [plaintiff] had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal

>connection between the protected activity and [the] adverse action.

Blizzard, 698 F.3d at 288 (alterations in original).

Here, Dobbins cannot establish that Brown or Dr. Rahija was aware of her protected speech or that there was a causal connection between that speech and her termination. Dobbins reported the offending statement only to her supervisor, Byers, not to Brown or Dr. Rahija, who terminated Dobbins. There is no evidence that Brown or Rahija was aware of Dobbins' complaint, and the evidence demonstrates that they terminated Dobbins for incompetent work performance.

**V. Conclusion**

For the foregoing reasons, no reasonable jury could conclude that Dobbins was unlawfully terminated because of her age or in retaliation for reporting age discrimination. St. Jude's Motion for Summary Judgment is GRANTED.

So ordered this 7th day of July, 2014.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE